# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2025-CA-00410-COA

STEVEN BOREN                                                                      APPELLANT

v.

801 CLAY STREET, LLC                                                              APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/21/2025 |
| TRIAL JUDGE: | HON. M. JAMES CHANEY JR. |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | PENNY B. LAWSON |
| | CLIFFORD C. WHITNEY III |
| ATTORNEY FOR APPELLEE: | KENNETH B. RECTOR |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 06/30/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., LAWRENCE AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1.     A property owner contracted with a window company for the purchase and installation of 223 windows at a cost of $167,250. The owner paid half the purchase price up front, but the windows were never delivered and the money was never refunded.

¶2.     After the owner filed suit, the county court ruled in its favor, and entered judgment against the window company partners, jointly and severally. Finding no error, we affirm.

## BACKGROUND FACTS

¶3.     A company called 801 Clay Street, LLC, owns the Hotel Vicksburg in Vicksburg. Managed by Tim Cantwell, the company was renovating the building.

¶4.     Cantwell was involved with several companies focused on redeveloping the

downtown. While supervising previous projects for these companies, Cantwell met Steven Boren. Boren ended up working on multiple redevelopment projects with Cantwell.

¶5.     Testimony would later establish that Boren was in a partnership with one John Burkett. Boren and Burkett did business as The Window Emporium. On behalf of 801 Clay, Cantwell requested Boren to give him a quote for replacing the windows in the hotel. The parties reached an agreement to have 223 windows manufactured, delivered, and installed at the hotel property for a price of $167,250.

¶6.     After signing the contract, 801 Clay gave Boren a check for $83,625 as partial payment of the contract price. The check was written out to "The Window Emporium." Boren deposited the check into TWE's bank account a couple days later.

¶7.     The windows for the hotel renovations were never delivered. Cantwell demanded the return of the $83,625 partial payment, but the money was never returned.

## PROCEDURAL HISTORY

¶8.     801 Clay filed suit in county court against "Steven Boren and John Burkett d/b/a The Window Emporium." The complaint asserted two causes of action—breach of contract and conversion of the $83,625.

¶9.     801 Clay "demand[ed] judgment against the Defendants jointly and severally," and requested four different types of relief. First, an award for "the amount of $83,625.00, being the amount of the deposit delivered by the Plaintiff" which "Defendants have converted and misappropriated." Second, "compensatory damages suffered by the Plaintiff as a result of Defendants' breach of contract." Third, "punitive damages, attorney's fees and costs to be

2

determined by the Court." Lastly, "[p]rejudgment and post judgment at the rate to be determined by the Court."

¶10. The case eventually proceeded to a single-day bench trial. Boren, who was represented by counsel, took the stand in his defense. Burkett represented himself pro se at trial, but never actually testified.

¶11. While acting as his own attorney, Burkett was given the opportunity to make an opening statement. He declared "there's no doubt that the plaintiff didn't receive his windows." The trial judge specifically asked Burkett, "what's your position on" 801 Clay Street's "claim that a deposit was made and not returned[?]" Burkett answered, "that's absolutely correct."

¶12. Burkett also emphasized that he and Boren were partners in TWE. It was Boren who signed up 801 Clay Street as a client, since "he was supposed to have been the partner in the company." In fact, Burkett pointed out that Boren's mother had prepared documents to formalize their partnership. Of this partnership agreement, he said "I signed it," and "I sent it back."

¶13. 801 Clay Street called Cantwell as the sole witness for its case-in-chief. Cantwell explained he had worked with Boren on previous construction projects. That work took place "prior to [Boren] surfacing as the owner of a window company," but "[i]t was a good experience and [I] liked him, and he performed."

¶14. During trial, Cantwell was asked, "did [Boren] at any time represent to you that he was working for himself or working for someone else?" Cantwell replied,

3

When the window piece came up, he was a partner in a window - - actually, I thought it was a manufacturer - - window company. . . . I thought that - - well, the representation was that they were being manufactured on behalf of the company that he was a partner with[.]

¶15. Boren submitted an affidavit pretrial claiming that he "was an employee of TWE and owned no interest in the business," and that he "understood TWE to be a limited liability company owned and managed by John Burkett." Cantwell was asked if he agreed with the affidavit. Cantwell testified it was "Certainly not what was represented [to me]. It's incorrect as represented to me, by Mr. Boren." And as a follow up question, he was asked if "[Boren] at any time represent[ed] to you that he was a W-2 employee of Mr. Burkett or some LLC," to which Cantwell said "No."

¶16. Additionally, Cantwell testified about the check for the hotel contract:

Q. When you delivered this 83,000-dollar deposit to Mr. Boren in connection with the hotel window project, did you understand he was receiving that check as an agent for anyone?
A. No.

Q. Did you understand that he was receiving that check as an employee for someone else?
A. No.

Q. Were you told at any time that someone other than Mr. Boren would have custody and control of your deposits?
A. Well, he and his partner would.

¶17. On cross, he was adamant Boren was partners with Burkett. Cantwell testified "[Boren] certainly did" say he was "an owner in the business, partner," and it was "[Cantwell's] impression was that it was a half owner."

¶18. Trial continued with Boren taking the stand. While initially declining to say he was

4

a partner in TWE, Boren essentially conceded it on cross-examination.

> Q. [Y]ou all had - - had made a handshake deal, hadn't you?
> A. All but, yes.
>
> Q. Okay. So you two friends had decided you were going to go into business together, going to call it The Windows Emporium, and you asked your mother to draw . . . up the papers; did you not?
> A. No. He was already in business and asked me to come join him.
>
> Q. And be a partner, is that right?
> A. He did, yes.
>
> Q. And you asked your mother to draw up the papers because you all had made this agreement. Isn't that true?
> A. I asked her to draw up the papers so we could make everything official.
>
> Q. But you had already made a verbal agreement to form a partnership. Isn't that true?
> A. Yes.

¶19. Boren's attorney then asked specifically about his dealings with Cantwell:

> Q. And the check for the deposit, the 83,000 approximately, you endorsed that check, correct?
> A. I did.
>
> Q. Okay. And you deposited it where?
> A. Into the business account.
>
> Q. And that was The Window Emporium?
> A. Yes.

¶20. Boren explained he received $17,000 from the Hotel Vicksburg project. And when asked on cross-examination if he "return[ed] that money to Mr. Cantwell," Boren responded, "No."

¶21. The county court found in 801 Clay's favor, ruling "that Plaintiff 801 Clay Street, LLC should have and recover judgment against the Defendants Steven Boren and John Burkett,

5

jointly and severally, in the amount of $83,625.00[.]"

¶22. Boren filed a post-trial motion requesting a new trial and/or for reconsideration, alteration or amendment of the court's judgment. His core argument was that he should not be found personally liable. He claimed "TWE at all relevant times was a limited liability company;" "Boren was nothing more than a disclosed agent for TWE;" and "if any conversion of the downpayment occurred, it was by TWE or Mr. Burkett."

¶23. The county court subsequently denied the motion, finding "that Boren presented himself to the Plaintiff as doing business as The Window Emporium, and that he presented himself as being an owner of the business." The county court held Boren "did not establish, and was not entitled to rely upon, the defense of being an agent of a disclosed principal."

¶24. Boren then appealed to the circuit court, which ultimately affirmed the county court's judgment. After reviewing the record, the circuit court found:

> Following negotiations with Boren, 801 Clay entered into a contract for the purchase and installation of replacement windows for a building in Warren County and paid the sum of $83,625.00 as a deposit. The windows were never provided or installed. The deposit was not refunded.

And the order declared: "in order to escape personal liability for breach of contract, Boren must show that he clearly disclosed that he was an agent for the Window[] Emporium." However, the circuit court concluded:

> there is substantial, credible, and reasonable evidence to support the trial court's determination that Boren represented himself to 801 Clay as an owner and/or partner in the company it was contracting with to provide and install windows and that he failed to disclose that he was acting merely in an agency capacity.

¶25. Boren now appeals to this Court for relief from the judgment against him personally.

6

**STANDARD OF REVIEW**

¶26. A trial "judge sitting without a jury has sole authority for determining credibility of the witnesses." *Knights Marine & Indus. Servs. Inc. v. Gulfstream Enters. Inc.*, 216 So. 3d 1164, 1168 (¶12) (Miss. Ct. App. 2017) (quoting *Byrd Bros. LLC v. Herring*, 861 So. 2d 1070, 1073 (¶14) (Miss. Ct. App. 2003)). "This Court does not reweigh the evidence or make witness-credibility determinations." *Turner v. State*, 425 So. 3d 553, 559 (¶20) (Miss. Ct. App. 2025) (quoting *Howell v. State*, 408 So. 3d 1276, 1281 (¶10) (Miss. Ct. App. 2024)).

**DISCUSSION**

¶27. We first acknowledge that Burkett never appealed the county court judgment to circuit court and did not appeal the circuit court's affirmance of that judgment, nor did he join in Boren's appeal assigned to this Court. It is only Boren, who was found jointly and severally liable, who has appealed.

¶28. Boren's appeal lists a dozen issues, but the body of his principal brief only addresses two of those arguments.[1] Boren segments his arguments into "Breach of Contract Claim" and

---

[1] To the extent Boren raises issues but does not brief them, we consider them waived. For "[c]ritically, an appellant has a duty to support his arguments with reasons and authorities." *Lewis v. State*, 374 So. 3d 529, 557 (¶118) (Miss. Ct. App. 2023). "Arguments that fail to cite supporting material are procedurally barred." *Id*. Relatedly, for the first time on appeal, Boren argues that the $83,625 was a "nonrefundable deposit," but this argument was not made at trial. "Issues raised for the first time on appeal are procedurally barred from review as they have not first been addressed by the trial court." *Griffin v. State*, 824 So. 2d 632, 635 (¶7) (Miss. Ct. App. 2002).

And in part, Boren attempts to attack the trial court's denial of his motion for summary judgment. But "appeals from the denial of a motion for summary judgment are interlocutory in nature and are rendered moot by a trial on the merits." *Miss. Bureau of Narcotics v. Hunter*, 311 So. 3d 629, 635 (¶22) (Miss. Ct. App. 2020); *see also Gibson v. Wright*, 870 So. 2d 1250, 1254 (¶8) (Miss. Ct. App. 2004) (recognizing that "once trial begins, summary judgment motions effectively become moot"). Therefore, because the

7

"Conversion Claim." Embedded throughout is Boren's core argument that he should not be held jointly and severally liable because he "was neither an actual, legal partner in TWE" but only "a salesman and employee of TWE who cannot be held personally liable for TWE's contracts." For the sake of convenience, we will address the merits of the trial court's findings and then Boren's claim he should not be held jointly and severally liable.

## I. Whether substantial evidence supports liability.

¶29. Boren attacks the finding by the county court that there was liability, contesting whether there even was a breach of contract or conversion.

¶30. The law is well-established that when it sits without benefit of a jury, "[t]he county court is the finder of fact[.]" *Knights Marine & Indus. Servs. Inc. v. Gulfstream Enters. Inc.*, 216 So. 3d 1164, 1168 (¶12) (Miss. Ct. App. 2017). We accord "the judgment of a circuit or county court in a non-jury trial . . . the same deference on appeal as a chancery court decree." *Rebuild Am. Inc. v. Colomb*, 344 So. 3d 864, 870 (¶15) (Miss. Ct. App. 2022) (quoting *Stevens v. Grissom*, 214 So. 3d 298, 300 (¶6) (Miss. Ct. App. 2017)). "The county court judge's findings will be upheld . . . 'so long as the ruling is supported by substantial, credible, and reasonable evidence.'" *Id*. (quoting *Woodkrest Custom Homes Inc. v. Cooper*, 108 So. 3d 460, 464 (¶10) (Miss. Ct. App. 2013)).

¶31. "As to issues of fact where no specific findings have been articulated by the [trial judge], this Court proceeds upon the 'assumption that the [trial judge] resolved all such fact issues in favor of the appellee.'" *Anderson v. Anderson*, 692 So. 2d 65, 72 (Miss. 1997)

county court entered a judgment after a bench trial on the merits was underway, the denial of the motion for summary judgment is not subject to review on appeal.

(quoting *Love v. Barnett*, 611 So. 2d 205, 207 (Miss. 1992)).

¶32. "Under Mississippi law, a plaintiff asserting any breach-of-contract claim has the burden to prove by a preponderance of the evidence (1) that a valid and binding contract exists; and (2) that the defendant has broken or breached it without regard to the remedy sought or the actual damage sustained." *White v. Jernigan Copeland Att'ys, PLLC*, 346 So. 3d 887, 896 (¶17) (Miss. 2022) (internal quotation marks omitted). "The remedy for a breach of contract is to put the nonbreaching party in the same position as that party would be in had the contract been performed." *Sunshine Mills, Inc. v. Nutra-Blend, LLC*, 417 So. 3d 133, 140 (¶13) (Miss. 2025).

¶33. At the trial of this matter, TWE partner Burkett was told by the county court "[s]ince you are not represented by counsel, you may make an opening statement[.]" Burkett responded "I can save the Court a lot of time," and he did. The first words he spoke were that "there's no doubt that the plaintiff didn't receive his windows. That's not disputed." He then agreed it was "absolutely correct" the $83,625 was never returned.

¶34. Subsequently, Cantwell, on behalf of 801 Clay, likewise testified he never received the windows and never received a deposit. Then Boren testified he deposited the check from 801 Clay into TWE's account, and pocketed $17,000. When asked if he "return[ed] that money to Mr. Cantwell," Boren responded, "No."

¶35. We can think of no clearer case for a breach of contract than this one. 801 Clay had the burden to prove by a preponderance of the evidence there was a contract and that the defendant breached it. All parties agreed there was a contract and Boren signed it. The

Window Emporium contracted with the plaintiff to provide it 223 windows to renovate the Hotel Vicksburg. The windows were never provided. When 801 Clay asked for a refund of the $83,625 it paid up front, it never received a penny back. This is more than sufficient to affirm.

¶36. The county court returned a general verdict which did not specify whether it found that Boren and Burkett breached the contract or converted the funds. *See* MRCP 49 (allowing general verdict forms). As we affirm there was substantial evidence of a breach of contract, we need not review Boren's arguments regarding conversion.

## II. Whether Boren was in a partnership.

¶37. We next address Boren's strenuous contention that he was not in a partnership with Burkett—an argument flatly rejected by the county court. Boren attacks the finding he was in a partnership with Burkett as TWE, arguing he was a "disclosed agent" of the company, and so could not be held liable for the actions of the company.

¶38. The Legislature has declared that "the association of two or more persons to carry on as co-owners of a business for profit forms a partnership, whether or not the persons intend to form a partnership." Miss. Code Ann. § 79-13-202(a). Accordingly, "although the existence of an actual written partnership agreement certainly is quite probative and useful, it is not necessary," our Supreme Court has reasoned. *Century 21 Deep S. Props. Ltd. v. Keys*, 652 So. 2d 707, 715 (Miss. 1995). For "[a] partnership may exist as an oral or written, express or implied agreement among its members." *Id*.

¶39. At the outset of trial, Burkett threw Boren under the bus by describing their

relationship in TWE as a partnership. He pointed out that Boren's mother had prepared documents to formalize their partnership on paper, and that he "signed it" and "sent it back" to Boren. Burkett also told the county court that Boren "presented himself as a partner in the company to Mr. Cantwell and them."

¶40.    For his part, Boren himself conceded that he had at least verbally agreed to form a partnership with Burkett. He also admitted that on the massive window deal that had gone sour with 801 Clay Street, he personally pocketed $17,000.

¶41.    Cantwell, on behalf of the plaintiff 801 Clay Street, repeatedly stated that he thought Boren was "half owner" of TWE, and that he believed he was dealing with a person who had the authority to bind the business as an owner — not just an agent.

¶42.    In the Uniform Partnership Act, the Legislature determined liability attaches to partners and also *purported* partners.

> If a person, by words or conduct, purports to be a partner, or consents to being represented by another as a partner, in a partnership or with one or more persons not partners, the purported partner is liable to a person to whom the representation is made, if that person, relying on the representation, enters into a transaction with the actual or purported partnership.
> . . . .
> If partnership liability results, the purported partner is liable with respect to that liability as if the purported partner were a partner.

Miss. Code Ann. § 79-13-308(a).

¶43.    In accord with this broad policy, all of those in a partnership can be held liable for the actions of one: "all partners are liable jointly and severally for all obligations of the partnership unless otherwise agreed by the claimant or provided by law." Miss. Code Ann. § 79-13-306(a).

11

¶44. To insulate himself from liability, Boren repeatedly asks us to ignore the testimony of the plaintiff, the concessions of Burkett, and the county court's findings of fact. But that is not our role as an appellate court. Instead, "[e]vidence that supports or reasonably tends to support the findings of fact below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court's finding of fact, must be accepted." *Anderson v. Anderson*, 692 So. 2d 65, 72 (Miss. 1997).

¶45. Applying our limited standard of review, there is evidence in the record to support the county court's finding that Boren purported to be and represented himself to be a partner in a window company during negotiations with Cantwell. In his opening statement, Burkett told the county court that Boren was his partner; Cantwell testified he believed Boren to be "half owner" of The Window Emporium; and Boren even testified he had agreed verbally to be in a partnership with Burkett.

¶46. Even if he were a "disclosed agent," as he argues now, that does not shield him from liability. "If there was tortious conduct, [a defendant] was not insulated from liability merely because he was a disclosed agent. It has been held in this jurisdiction as well as others that any officer or agent of a corporation who actively participates in the commission of a tort [conversion] is personally liable to third persons injured thereby." *Wilson v. S. Cent. Miss. Farmers Inc.*, 494 So. 2d 358, 361 (Miss. 1986) (alteration in original).

¶47. For these reasons, the decision is affirmed.

## CONCLUSION

¶48. The county court determined that Boren and Burkett, as partners in TWE, were liable

to 801 Clay Street for failing to deliver the windows per contract or repay the $83,625 it had received up front. There was substantial evidence to support this finding. Likewise, we affirm the determination that Boren and Burkett were partners or purported partners and therefore subject to joint and several liability.

¶49.    **AFFIRMED.**

**CARLTON, P.J., WESTBROOKS, McDONALD, LAWRENCE, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. BARNES, C.J., AND WILSON, P.J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**